THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

MADERA WEST CONDOMINIUM ASSOCIATION,

Plaintiff,

v.

FIRST SPECIALTY INSURANCE CORPORATION,

Defendant.

CASE NO. C12-0857-JCC

ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT

This matter comes before the Court on Plaintiff's motion for summary judgment (Dkt. No. 31) and Defendant's motion for summary judgment (Dkt. No. 35). Having thoroughly considered the parties' briefing and the relevant record, the Court hereby GRANTS in part and DENIES in part the motions (Dkt. Nos. 31, 35) for the reasons explained herein.

## I. BACKGROUND

Madera West, LLC ("Madera West"), a non-party to this action, is a developer that converted a 172-unit apartment complex into condominiums and created Plaintiff, the Madera West Condominium Association ("Association") to maintain, repair, replace or restore common elements of the condominiums. (Dkt. No. 1 at 1–2.) Madera West hired non-party Steadfast Construction, Inc., to complete work on the conversions after having fired a prior sub-contractor. (Dkt. No. 38 at 21.) Madera West and Steadfast entered into a contract dated October 11, 2005,

under which Steadfast was to perform "[r]enovation of unit interiors." (Dkt. No. 22-1 at 1.) This work included replacing carpeting and flooring, painting, and replacing door handles, electrical outlet covers, and appliances (Dkt. No. 22-1 at 23.) On some units, Madera West had Steadfast apply a coating to exterior decks and make other repairs to decks. (Dkt. No. 22-1 at 24.)

Defendant First Specialty Casualty Insurance Company provided Steadfast with two general liability commercial insurance policies. The first policy was effective August 15, 2004 to August 15, 2005. (Dkt. No. 22-3 at 4 (Policy No. FCP229002179600).) The second was effective August 15, 2005 to August 15, 2006. (Dkt. No. 22-4 at 6 (Policy No. FCP229002179601).) Under the terms of the policies, third parties for whom Steadfast worked under a written contract requiring indemnification were additional insureds. (Dkt. No. 22-4 at 22.) Additional coverage terms and exclusions are discussed later in this order.

In March 2009, Plaintiff Association sued Madera West in King County Superior Court, alleging that construction defects caused property damage to the condos. (Dkt. No. 33-6 at 4–9.) The complaint included claims against "John Doe" contractors who performed work on the condos. (Dkt. No. 33-6 at 1, 8–9.) Steadfast was not specifically named in the original complaint. (Dkt. No. 33-6 at 4–9.) In January 2011, Madera West filed an answer to the Association's amended complaint and a third-party complaint against Steadfast. (Dkt. No. 33-16.)

The Association settled the underlying suit with both Madera West and Steadfast. (Dkt. No. 22-18.) The parties agreed to entry of a confession of judgment for $516,889 against Steadfast. (Dkt. No. 22-1.) They also agreed to entry of a confession of judgment for $5,426,858 against Madera West. (Dkt. No. 22-18 at 2; Dkt. No. 22-20 at 8.) Colony Insurance Company, which defended Steadfast as a named insured and Madera West as an additional insured, agreed to pay the Association $300,000. (Dkt. No. 22-18 at 2.) The Association agreed not to seek to execute the judgments against either Steadfast or Madera West. (Dkt. No. 22-18 at 3.) In exchange, Madera West and Steadfast assigned their rights against First Specialty to the Association. (Dkt. No. 22-18 at 2.)

In the instant action, the Association has sued First Specialty alleging: (1) breach of contract for refusal to defend or indemnify Steadfast; (2) bad faith for failing to defend Steadfast; (3) bad faith for failing "notify Madera West of its denial of defense and coverage"; and (4) for costs any attorney's fees accrued in the underlying action. (Dkt. No. 1 at 5–8.)

## II. DISCUSSION

### A. Motions to Strike

First Specialty argues that a summary exhibit (Dkt. No. 22-6) filed by the Association should not be considered because it is "unauthenticated and hearsay." (Dkt. No. 39 at 3.) The document (Dkt. No. 22-6) is a table showing the dates on which statutory warranty deeds for various condo units were issued. (Dkt. No. 22 at ¶ 6.) In response to First Specialty's motion to strike the exhibit, the Association filed a copy of each supporting statutory warranty deed. (Dkt. No. 48-4.) The Court randomly selected a few entries on the challenged exhibit (Dkt. No. 22-6) and compared the dates listed thereon with those listed on the statutory warranty deeds (Dkt. No. 48-5). It found no discrepancies. The Court finds that Document No. 22-6 is a useful summary of the information found in Document No. 48-5 and may be considered under Federal Rule of Evidence 1006. Accordingly, First Specialty's motion to strike Document No. 22-6 is DENIED. If First Specialty identifies any errors in the exhibit it may bring them to the Court's attention in subsequent proceedings.

The Association moves to strike all the evidence submitted by First Specialty in support of its motion for summary judgment (Dkt. No. 49 at 3–7.) The Association argues that this severe sanction is warranted because it believes that First Specialty failed to preserve or destroyed evidence. (Dkt. No. 49 at 3, 5–7.) The Association also argues that First Specialty should be precluded from relying on a declaration submitted by Mr. Joe Alvare (Dkt. No. 36) because Mr. Alvare was not produced in response to the Association's Rule 30(b)(6) deposition notice.

A district court has the inherent power to "levy sanctions in response to abusive litigation

practices." *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 958 (9th Cir. 2006) (affirming dismissal of action after the plaintiff intentionally deleted potentially relevant files from his computer). In this case, however, there is no evidence that First Specialty engaged in abusive litigation practices. First Specialty's initial disclosures were clearly, and admittedly, deficient because the claim file First Specialty produced did not include the claim log notes. (Dkt. No. 56 at ¶¶ 1–2.) According to defense counsel, the log notes were inadvertently omitted from the initial disclosures, and she did not realize this oversight had occurred until the Association's counsel brought it to her attention. (Dkt. No. 56 at ¶¶ 2–4.) The Association's attorney initially stated in an email that the apparent mistake was "not a problem as productions are cumbersome and things happen." (Dkt. No. 56 at 12.) Although First Specialty's failure to produce an important part of its claims file in a timely manner is concerning, there is nothing in the record suggesting that the failure to do so was anything but an oversight. Moreover, it is surprising that experienced counsel such as the Association's did not notice that no claim log was produced and inquire about it months ago.

The Association now argues that the late-produced log notes were altered before they were produced because: (1) they reflect an entry showing a check request for mediation in 2010, long before the parties ever discussed mediation; and (2) a June 29, 2010 entry under the note title "investigation" has no additional notes while all other entries under that title have extensive notes. (Dkt. No. 49 at 6.) This is scant evidence to support serious allegations of the kind made by the Association's counsel. Both assertions are roundly refuted by the declarations of Garrett Sullivan, the claims handler who created many of the entries in the log. (Dkt. Nos. 54, 55.) The Association does not appear to have given First Specialty an opportunity to explain the purported inconsistencies in the claims log before seeking sanctions for evidence spoliation, which was unprofessional and unfair.

The Association's argument that First Specialty is precluded from relying on the testimony of any employee except the one it produced in response to the Association's Rule 30(b)(6) deposition notice is unsupported by any authority. First Specialty has made no attempt

to represent that the testimony of Mr. Alvare, or that of Mr. Ed Walleston—whom it produced in response to the Rule 30(b)(6) deposition notice, is based on anything but a review of the existing claims file. The Association's related argument that First Specialty attempted to "bury" evidence that would have been produced by Garrett Sullivan, the claims handler assigned to Steadfast's claim, is incorrect. First Specialty disclosed Mr. Sullivan's role in the case in its initial disclosures (Dkt. No. 50-1 at 2) and advised the Association months ago that he no longer worked for First Specialty's third-party claims handling company (Dkt. No. 50-2 at 2). It appears that the Association took no steps to depose Mr. Sullivan until shortly before the discovery cut-off, which was entirely the Association's decision.

Finally, the Association argues that First Specialty failed to preserve communications related to this case because the Association has received communications from the files of other entities, which should have been in First Specialty's files as well. (Dkt. No. 49 at 5.) The Association has not clearly set forth which documents it believes First Specialty failed to preserve, from where the Association ultimately got copies of those documents, or other specific information tending to support its claim for spoliation. In the absence of such a record, the Court cannot award sanctions against First Specialty.

For the foregoing reasons, the Association's request for sanctions is DENIED. The Court reminds both parties that it sets high standards of professionalism for all attorneys practicing before it.

**B. Summary Judgment Standard**

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue of fact is genuine if there is sufficient evidence for a reasonable jury to find for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986). At the summary judgment stage, evidence must be viewed in the light most favorable to the nonmoving party, and all justifiable inferences are to be drawn in the nonmovant's favor. *Id.* at

255.

**C. The 2004-2005 Policy**

First Specialty argues that any claims based on the first policy it issued to Steadfast, No. FCP229002179600, should be dismissed. (Dkt. No. 35 at 17; Dkt. No. 39 at 17.) The policy covers property damage that occurs "during the policy period" and the policy expired on August 15, 2005, prior to the date of the contract between Steadfast and Madera West and prior to Steadfast doing any work on the condos. (*Id.*) The Association makes no response to this argument except to state in a footnote that "Plaintiff is considering a request by Defendant to dismiss claims against or arising out of the 2004-2005 policy." (Dkt. No. 31 at 4 n.1.) Failure to respond to an argument made by the opposing party waives the right to do so. *See Aramark Facility Servs. v. Serv. Emp. Int'l Union, Local 1877*, 530 F.3d 817, 824 n.2 (9th Cir. 2008) (failing to adequately brief arguments waives them). Moreover, the Court does not see how the Association could dispute that the policy expired before Steadfast began work on the condos. Accordingly, any claims based on the 2004-2005 policy are DISMISSED with prejudice.

**D. Failure to Respond to Madera West's Tender**

The Association's Third Cause of Action alleges that "First Specialty committed bad faith for not notifying Madera West LLC of its denial of defense and coverage of the Association's claims." (Dkt. No. 1 at ¶ 48.) First Specialty argues that this allegation is refuted by the record, which includes an April 30, 2010 letter from First Specialty to Madera West's insurance broker denying Madera West's request for coverage. (Dkt. No. 35 at 21–22; Dkt. No. 36.) The letter states "First Specialty will not defend or indemnify Madera West against the claims in this matter . . . ." (Dkt. No. 36 at 8.) Again, the Association fails to make any meaningful response to First Specialty's argument and the Court has difficulty imagining what response it could make given the documents in the record. Accordingly, the Association's Third Cause of Action is DISMISSED with prejudice.

**E. Consumer Protection Act and Insurance Fair Conduct Act**

The Association's motion seeks summary judgment on claims for violations of the Washington Consumer Protection Act ("CPA"), Revised Code of Washington, section 19.86 *et seq*., and the Insurance Fair Conduct Act ("IFCA"), Revised Code of Washington, section 48.30.010 *et seq.* based on insurance code violations. The Association's complaint, however, makes absolutely no reference to the CPA. The Court obviously cannot grant judgment on a claim that was not pled. Accordingly, the Association's motion for summary judgment based on its CPA "claim" is DENIED.

The Association's prayer for relief seeks "treble damages under RCW 48.30." (Dkt. No. 1 at ¶ 51.) The Court is doubtful that this passing reference to the statute adequately pleads an IFCA claim. Even if it does, however, the Association failed to provide First Specialty with the statutory notice required before filing an IFCA claim. *See* Wash. Rev. Code § 48.30.015(8)(a). The statute requires that a claimant provide written notice of the basis for an IFCA claim to both the insurer and the state insurance commissioner, at least twenty days before filing suit. *Id.* The Court agrees that failure to strictly comply with the statutory notice requirement is grounds for dismissal of an IFCA claim. *Norgal Seattle P'ship v. Nat'l Sur. Corp.*, C11-0720-RSL, 2012 WL 1377762, at *4 (W.D. Wash. Apr. 12, 2012). Moreover, the Association's demand letter to First Specialty (Dkt. No. 33-19) did not "substantially comply" with the notice requirement; it is a demand for payment that makes no reference to the statute, violations of the insurance code, or any prior denial of coverage. Accordingly, the Association's IFCA claim is DISMISSED with prejudice.

**F. Duty to Defend**

**1. Tender**

First Specialty argues that it did not breach any duty to defend Steadfast, much less do so in bad faith, because Steadfast never tendered the claims against it to First Specialty. (*See, e.g.*, Dkt. No. 35 at 1; Dkt. No. 39 at 2.) The Association responds that Steadfast tendered the claims

on multiple occasions and that First Specialty unambiguously denied them.

An insurer's duty to defend is "separate from, and substantially broader than, its duty to indemnify." *Nat'l Sur. Corp. v. Immunex Corp.*, 297 P.3d 688, 691 (Wash. 2013) (citing *Truck Ins. Exch. v. VanPort Homes, Inc.*, 58 P.3d 276 (Wash. 2002)). "[I]f there is any reasonable interpretation of the facts or the law that could result in coverage, the insurer must defend." *Id.* (alteration in original) (quoting *Am. Best Food, Inc. v. Alea London Ltd.*, 229 P.3d 693, 696 (Wash. 2010)). But, "breach of the duty to defend cannot occur before tender." *Mut. of Enumclaw Ins. Co. v. USF Ins. Co.*, 191 P.3d 866, 873 (Wash. 2008) (quoting *Griffin v. Allstate Ins. Co.*, 29 P.3d 777, 782 (Wash. Ct. App. 2001)). "[A]n insurer cannot be expected to anticipate when or if an insured will make a claim for coverage; the insured must affirmatively inform the insurer that its participation is desired." *Id.* (alteration in original). "The duties to defend and indemnify do not become legal obligations until a claim for defense or indemnity is tendered." *Id.*

Although it is clear that an insurer has no duty to defend before the insured tenders a claim and asks for a defense, it is less clear exactly what "tender" requires under Washington law. In *Unigard Ins. Co. v. Leven*, 983 P.2d 1155, 1160 (Wash. Ct. App. 1999), the Washington Court of Appeals rejected the argument that simply giving an insurer notice of a claim is sufficient to tender the claim. *Leven* involved a general liability insurance policy that covered both a corporate entity and its individual owner. *Id.* at 1157. The corporate entity tendered claims in a private suit for environmental contamination to Unigard. *Id.* at 1158. Leven, the owner, was not named individually in the complaint, but nonetheless hired counsel to handle his personal interests in the litigation. *Id.* Subsequently, separate government enforcement actions were filed against both the corporate entity and Leven. *Id.* Unigard had notice of the enforcement action against the corporate entity but not against Leven. *Id.* The court concluded that Leven was not entitled to a defense in the private suit because he was not named in that suit. *Id.* at 1160. Further, the court found that Leven was not entitled to defense or indemnity in the government

enforcement action because he failed to notify Unigard of the action until seven years after it was commenced, and the delay prejudiced Unigard. *Id.* at 1162–63.

Under *Leven*, simply putting an insurer on notice of a claim does not constitute tender sufficient to trigger the duty to defend. That rule, however, is not easily applied in this case. Steadfast sent copies of litigation documents to First Specialty.[1] On April 19, 2010, Steadfast sent a subpoena duces tecum and deposition notice, and asked whether they should allow the Association's attorney to pick up the requested documents. (Dkt. No. 33-9 at 4.) Steadfast then sent First Specialty a second copy of the same documents and a copy of the Association's complaint against Madera West. (*Id.* at 3.) Steadfast's office manager stated that she was waiting for instructions from either Steadfast's insurance broker or First Specialty regarding whether to provide the files requested by the Association's attorney. (*Id.*) These communications are requests that First Specialty assist Steadfast in responding to a complaint that named John Doe subcontractors, which could have included Steadfast. (Dkt. No. 33-6 at 3.)

Moreover, Steadfast was contractually obligated to indemnify the named defendant, Madera West, for any damages resulting from Steadfast's work. (Dkt. No. 22-1 at 3.) First Specialty was aware of this obligation (Dkt. No. 33-9 at 1 (email from Garrett Sullivan stating that he had "reviewed the subcontract").) Madera West had formally tendered the claims against it to First Specialty by letter dated April 12, 2010. (Dkt. No. 33-6 at 2.)

First Specialty's claims handler emailed Steadfast on April 19, 2010 stating "Currently Steadfast is NOT a named party to this law suit. First Specialty will not be hiring an atty [sic] at this time. In quick review, it appears there is no coverage for this claim under the First Specialty policy because there is a Residential Construction Exclusion." (Dkt. No. 33-9 at 1–2.) On April

---

[1] Most of the communications discussed in this order were with a claims adjuster at NovaPro Risk Solutions, a third-party claims handling company for First Specialty. The Court considers all communications to or from NovaPro to be communications to or from First Specialty.

30, 2010, First Specialty sent Steadfast a letter entitled "DENIAL OF COVERAGE UNDER THE GENERAL LIABILITY POLICIES." (Dkt. No. 33-12 at 1.) The second paragraph of the letter states, "we must respectfully deny the request for the defense and/or indemnity of Steadfast Construction Inc. ("Steadfast") in this action." (Dkt. No. 33-12 at 1.) The letter is twelve pages long and lays out the various grounds on which First Specialty concluded that there was no coverage for the claims raised in the Association's suit against Madera West. (Dkt. No. 33-12.) On the eleventh page, the letter states, "First Specialty respectfully declines the *tender of defense and indemnity of Steadfast*." (Dkt. No. 33-12 at 11 (emphasis added).) It then says:

> Should the claimants file a complaint, we ask that you provide our office with a copy of that complaint and any discovery which potentially triggers coverage under these policies so that we may have the opportunity to review the same and determine if at that time there would be coverage afforded to Steadfast.

(Dkt. No. 33-12 at 11.) First Specialty sent a nearly identical letter to Madera West on April 30, 2010. (Dkt. No. 36 at 8.) First Specialty now argues that these letters were not denials of coverage or a defense. Its own claims log, however, describes them as "Denial Letters." (Dkt. No. 50-8 at 7.)

On October 18, 2010, after receiving First Specialty's letter denying its request for a defense, Steadfast sent First Specialty a copy of a notice of construction defect claim from Madera West's attorney. (Dkt. No. 33-14 at 5–6.) Steadfast's email, to which the document was attached, described it as a "Notice of Construction Defect Claim *naming Steadfast Construction*." (Dkt. No. 33-14 at 1 (emphasis added).) The email asked First Specialty to, "Please advise on what we do at this point."[2] (*Id.*)

In February 2011, a few days after Steadfast was served with Madera West's third-party complaint expressly naming it, Steadfast's attorney made two phone calls to First Specialty.

[2] The Association argues that First Specialty responded by re-sending its prior denial letter and copies of First Specialty's policies. (Dkt. No. 31 at 7.) The exhibit on which the Association relies does not include copies of the email attachments and it is not clear to the Court whether the denial letter was in fact sent a second time. (*See* Dkt. No. 33-15 at 1.)

(Dkt. No. 33-17; Dkt. No. 33-18.) The attorney has no record that her calls were ever returned. (Dkt. No. 33-18.) She also has no record of having sent First Specialty a formal tender letter. (Dkt. No. 37 at 2.) Her involvement in the matter ended shortly thereafter when she sent a tender letter to Colony Insurance—a second Steadfast insurer—and Colony accepted the tender. (*Id.*)

The parties have not cited any Washington case discussing tender presenting similar facts, and the Court's research has revealed none. The Court must therefore "use [its] best judgment to predict" how the Washington Supreme Court would decide the issue. *United States v. Bibbins*, 637 F.3d 1087, 1095 (9th Cir. 2011).

Steadfast did not send First Specialty a formal tender letter. Nonetheless, First Specialty sent Steadfast a letter denying its "tender of defense and indemnity" in the lawsuit brought by the Association against Madera West. The Court finds dubious First Specialty's argument that under Washington law, an insured must formally tender its request for a defense after the insured has given the insurer notice of the claim *and* the insurer has issued a letter denying a defense and indemnity on the claim. Moreover, Steadfast did more than simply put First Specialty on notice of the potential claims against it. Steadfast sent First Specialty emails attaching litigation documents and expressly asking First Specialty to advise Steadfast on how to respond or proceed. (Dkt. No. 33-9 at 3–4; Dkt. No. 33-14 at 1.) The Court finds that these requests "affirmatively inform[ed] the insurer that its participation was desired." *Mut. of Enumclaw Ins. Co.*, 191 P.3d at 873. First Specialty's review of the claims, analysis of them under its policies, and issuance of a denial letter support that conclusion. First Specialty's own letter characterized Steadfast's request for assistance as "the tender of defense" and expressly declined it. (Dkt. No. 33-12.)

The Court concludes that Steadfast tendered defense of the claims in the underlying suit to First Specialty by October18, 2010 at the latest. (*See* Dkt. No. 33-14.)

**2. Policy Coverage and Exclusions**

An insurer has a duty to defend its insured if its policy "conceivably covers the

allegations in the complaint." *Woo v. Fireman's Fund Ins. Co.*, 164 P.3d 454, 459 (Wash. 2007). "[I]f there is any reasonable interpretation of the facts or the law that could result in coverage, the insurer must defend." *Am. Best Foods*, 229 P.3d at 700. An insurer cannot deny its insured a defense "based on an arguable legal interpretation of its own policy." *Id.* Instead, the insurer should give the insured "the benefit of the doubt as to the duty to defend" and "avail itself of legal options such as proceeding under a reservation of rights or seeking declaratory relief." *Id.* Failure to defend based on a questionable interpretation of law is unreasonable and constitutes bad faith as a matter of law. *Id.* But, the duty to defend "is not triggered by claims that clearly fall outside the policy." *Immunex Corp.*, 297 P.3d at 691.

The Court begins by determining whether First Specialty's policy "conceivably" covered the allegations in the two underlying complaints, or whether those claims "clearly fall outside the policy."

**i. Occurrences**

The 2005-2006 policy covers "property damage" that "first occurs" or "first takes place" during the policy period. (Dkt. No. 22-4 at 37.) Property damage is defined as "physical injury to tangible property." (*Id.* at 38.) Property damage "is deemed to 'first occur' or 'first take place' when . . . [it] first becomes known, or reasonably should become known, to any person or entity." (*Id.*)

Accordingly to First Specialty, the alleged damage to the Madera West condos did not "first occur" during the policy period because the confession of judgment signed by Steadfast acknowledges that, "Prior to commencing the conversion construction, Madera West, LLC discovered that there were significant deficiencies with the roofs, decks, and siding of the Project." (Dkt. No. 22-1 at 23.) First Specialty argues that all of the damages for which Madera West sought to hold Steadfast liable were caused by deficiencies known before the policy period.

This argument can only go to the question of First Specialty's duty to indemnify. It cannot excuse First Specialty from its duty to defend because neither complaint in the underlying

suit alleges that any entity knew about deficiencies in the buildings prior to commencement of the conversion project. *See Woo*, 164 P.3d at 459 ("The insurer may not rely on facts extrinsic to the complaint to deny the duty to defend—it may do so only to trigger the duty."). Even with respect to the duty to indemnify, there is at least a genuine issue of material fact as to whether the damages described in the underlying suit were caused by known deficiencies in the buildings or were caused, or exacerbated, by Steadfast's work. The confession of judgment states that Mark Jobe, the Project Manager of Property Damage Investigations, testified that Steadfast's work on the condo decks "fell below industry standards, and as a result, caused damage to other building components in or around these decks." (Dkt. No. 22-1 at 25.) Jobe declares that "rainfall intrusion through the improper installation of WRB and related flashing components most recently completed by Steadfast" caused damage to the condos. (Dkt. No. 46 at ¶ 1.)

First Specialty also argues that the damages alleged in the underlying complaints clearly fell outside of the coverage period because, according to its internet research, the Madera West condos project was not completed until 2007. As an initial matter, "[t]he insurer may not rely on facts extrinsic to the complaint to deny the duty to defend—it may do so only to trigger the duty." *Woo*, 164 P.3d at 459. First Specialty's reliance on the internet research done by its claims handler is arguably an independent basis for a finding of bad faith against it. Moreover, the Association has submitted evidence demonstrating that Steadfast's work on numerous units was complete before August 2006, when the policy expired, because the units had already been sold by that date. (Dkt. No. 22-6; Dkt. No. 48-4.) First Specialty may have had a good argument for excluding some of the alleged damages based on when work on specific units was completed, but it waived its opportunity to make those arguments by refusing to participate in Steadfast's defense.

Based on the underlying complaints in this action, it was conceivable that the property damage alleged first occurred during the policy period. Because the damages alleged did not clearly fall outside the policy's definition of an occurrence, the duty to defend was triggered if no

exclusion clearly applied.

**ii. Construction of Residential Property Exclusion**

The 2005-2006 policy states:

> In consideration for the premium charged, it is understood and agreed that no coverage exists and no duty to defend is provided for:
>
> Any and all claims, including . . . claims for . . . 'property damage' . . . arising out of, related to, caused by or associated with, in whole or in part, the construction of residential properties, including but not limited to . . . apartment buildings or complexes, townhomes, or condominiums.

(Dkt. No. 22-4 at 23.) First Specialty argues that this "Residential Construction Exclusion" operates to bar coverage for all work done on residential properties. The Association argues that the exclusion only applies building new residential units, and not to the types of repairs or maintenance work that Steadfast did on the condo decks. (Dkt. No. 31 at 19.)

For purposes of determining whether First Specialty had a duty to defend Steadfast, the question is whether "there is any reasonable interpretation of the facts or the law that could result in coverage." *Am. Best Foods*, 229 P.3d at 700. First Specialty improperly denied Steadfast a defense if it did so "based on an arguable legal interpretation of its own policy." *Id.* A clause in an insurance contract is ambiguous, "only when, on its face, it is fairly susceptible to two different interpretations, both of which are reasonable." *Quadrant Corp. v. Am. States Ins. Co.*, 110 P.3d 733, 737 (Wash. 2005).

The key phrase in the Residential Construction Exclusion is, "arising out of, related to, caused by or associated with, in whole or in part, the construction of residential properties." The word "construction" is defined as "the action of framing, devising, or forming, by the putting together of parts; erection, building." Oxford English Dictionary, Second Edition (2001). It is also defined as "the act of putting parts together to form a complete integrated object." Webster's 3d New Int'l Dictionary (2002). As the definition of the word construction suggests, the average person purchasing insurance could easily understand this exclusion to apply only to the building or erection of residential properties (i.e. new construction). Contrary to First Specialty's

argument, the phrase does not unambiguously refer to any and all work on residential property, including maintenance, improvements, or repairs. It is at least conceivable that the Residential Construction Exclusion does not apply to Steadfast's work on the Madera West condos, which included repainting interiors, minor carpentry work, applying new coatings to the decks, and other minor repairs to the decks.[3] Because First Specialty denied Steadfast's claim based on "an arguable legal interpretation of its own policy," its denial of coverage based on the Residential Construction Exclusion constituted bad faith as a matter of law. *Am. Best Foods*, 229 P.3d at 700.

**iii. Fungi or Bacteria Exclusion**

First Specialty argues in passing that its fungi or bacteria exclusion "may" apply to preclude coverage. (Dkt. No. 35 at 20–21.) As First Specialty cannot articulate a persuasive argument as to why the exclusion precludes coverage, it must be at least "conceivable" that the exclusion does not relieve First Specialty of its duty to defend.

**3. Remedy**

When an insurer has breached the duty to defend in bad faith, harm is presumed and, unless the insurer rebuts the presumption of harm, the remedy is to "estop the insurer from arguing a coverage defense." *Kirk v. Mt. Airy Ins. Co.*, 951 P.2d 1124, 1127–28 (Wash. 1998). The fact that another insurer is actively defending an insured does not relieve the insurer of the duty to defend. *Ledcor (USA) Indus. v. Mut. of Enumclaw Ins. Co.*, 206 P.3d 1255, 1260 (Wash.

---

[3] First Specialty's argument that Steadfast "agreed" with its claims administrator that the Residential Construction Exclusion precluded coverage of the claims in the underlying suit overstates the significance of email communications between Steadfast, its broker, and the claims administrator. (Dkt. No. 23, 28.) The fact that Steadfast or its broker repeated the administrator's broad reading of the exclusion does not mean that they agreed with it.

Moreover, other extrinsic evidence in the record, particularly Steadfast's application for insurance (Dkt. No. 33-1) and its broker's request for a quote (Dkt. No. 33-2), strongly counsel against finding that the Residential Construction Exclusion is a blanket exclusion of all work done on residential properties. If the exclusion were that broad, it appears that it would not cover any work done by Steadfast on any project and would render the entire policy illusory.

Ct. App. 2009). Moreover, an insurer who refuses to defend has "forfeited its ability to protect itself against an unfavorable settlement, unless the settlement is the product of fraud or collusion." *Truck Ins. Exch.*, 58 P.3d at 284.

First Specialty's failure to defend its insured based on its own arguable interpretation of its policy dictates a finding of bad faith and a presumption of harm. *See Kirk*, 951 P.2d at 1128; *Am. Best Foods*, 229 P.3d at 700. First Specialty argues that the presumption of harm is rebutted because Steadfast was represented by counsel provided by a different insurer. First Specialty misreads *Ledcor*, 206 P.3d at 1260–61, which states that an insurer's failure to defend and the resulting remedy of coverage by estoppel does not expand the insurer's liability to "create coverage" for claims against parties not insured by the policy. *Ledcor* also concludes where the insured was adequately defended by another insurer there may be no damages to award for bad faith beyond the insurer's share of any judgment entered against the insured, not that there was no bad faith. *Id.* at 1261. Accordingly, a finding of coverage by estoppel is appropriate under *Kirk*. First Specialty is estopped from arguing coverage defenses against Steadfast[4] and is liable for the unpaid portion of the confession of judgment against Steadfast.

## III. CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment (Dkt. No. 31) is GRANTED in part and DENIED in part. Also for the foregoing reasons, Defendant's motion for summary judgment (Dkt. No. 35) is GRANTED in part and DENIED in part.

//

//

//

---

[4] For example, First Specialty is precluded from further advancing its arguments based on the exclusions found in sections I.2.j(5)–(6), which are not based on claims in the underlying complaints, but instead are based either on evidence extrinsic to the complaint or information revealed during the course of the underlying litigation. Accordingly, they cannot provide a valid basis for First Specialty's refusal to defend and further investigate the claims against Steadfast.

DATED this 6th day of August 2013.

John C. Coughenour
UNITED STATES DISTRICT JUDGE