THE HONORABLE JOHN C. COUGHENOUR

1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9    MADERA WEST CONDOMINIUM          CASE NO. C12-0857-JCC
     ASSOCIATION,
10                                     ORDER ON MOTIONS FOR
11                    Plaintiff,       SUMMARY JUDGMENT ON
                                       DAMAGES
12            v.

13   FIRST SPECIALTY INSURANCE
     CORPORATION,
14
                      Defendant.
15

16        This matter comes before the Court on the parties' cross motions for summary judgment

17   on damages (Dkt. Nos. 66, 70). Having thoroughly considered the parties' briefing and the

18   relevant record, the Court hereby GRANTS IN PART and DENIES IN PART the motions (Dkt.

19   Nos. 66, 70) for the reasons explained herein.

20   **I.    BACKGROUND**

21        This is an insurance coverage dispute arising from alleged defects in the construction of

22   condominiums. Plaintiff Madera West Condominium Association ("Association") settled its

23   claims against all of the defendants in the underlying construction defect suit, including non-

24   parties Madera West, LLC, the condominium project's general contractor, and Steadfast

25   Construction, Inc., a subcontractor. (Dkt. No. 22-18.) Steadfast agreed to entry of a confession of

26   judgment against it in the amount of $516,889. (Dkt. No. 22-18.) The judgment against Steadfast

1  in the underlying suit was approved as reasonable by the presiding state trial court judge. (Dkt.

2  No. 69-2.) Defendant First Specialty Insurance Company ("First Specialty") insured Steadfast

3  and covered Madera West, LLC as an additional insured. (Dkt. No. 22-4.)

4        The Court previously ruled that First Specialty breached its duty defend Steadfast. (Dkt.

5  No. 58 at 7–15.) Moreover, the Court ruled that under Washington law the breach was in bad

6  faith and First Specialty was estopped from asserting further coverage defenses. (Dkt. No. 58 at

7  15–16.) The Court dismissed all of the Association's other claims. (*Id.*)

8        The issue before the Court on the parties' cross motions for summary judgment is the

9  amount of damages to which the Association may be legally entitled. The parties appear to agree

10  that the confession of judgment against Steadfast is the appropriate measure of damages caused

11  by First Specialty's breach. (Dkt. No. 70 at 3; Dkt. No. 74 at 5); *see also Besel v. Viking Ins. Co.*

12  *of Wis.*, 49 P.3d 887, 889 (Wash. 2002) (holding that "a settlement approved as reasonable is the

13  proper measure of damage caused by an insurance company's bad faith"). The primary disputes

14  between the parties are whether First Specialty is entitled to an offset for amounts paid to the

15  Association by another Steadfast insurer, the amount of any interest to which the Association is

16  entitled, and whether the Association is entitled to attorney's fees, and if so, the appropriate

17  amount of those fees.

18  **II.    DISCUSSION**

19       **A.    Summary Judgment Standard**

20        A court must grant summary judgment "if the movant shows that there is no genuine

21  dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

22  Civ. P. 56(a). An issue of fact is genuine if there is sufficient evidence for a reasonable jury to

23  find for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986). At

24  the summary judgment stage, evidence must be viewed in the light most favorable to the

25  nonmoving party, and all justifiable inferences are to be drawn in the nonmovant's favor. *Id.* at

26  255. The disputes between the parties are legal, not factual, so resolution of the motions on

1   summary judgment is appropriate.

2         **B.      Offset**

3         The Association argues that First Specialty has waived its right to claim any offset for

4   payments made to the Association by other insurers on behalf of either Steadfast or Madera

5   West, LLC. Federal Rule of Civil Procedure 8(c) requires that a defendant state any "avoidance

6   or affirmative defense" in its answer to a pleading. As a general rule, defenses not properly

7   raised in a party's responsive pleading are deemed waived. *Morrison v. Mahoney*, 399 F.3d

8   1042, 1046 (9th Cir. 2005) (citing Fed. R. Civ. P. 8(c) and 12(g)). The Ninth Circuit, however,

9   has "liberalized the requirement that affirmative defenses be raised in a defendant's initial

10  pleading." *Rivera v. Anaya*, 726 F.2d 564, 566 (9th Cir. 1984). The court has said that "absent

11  prejudice to a defendant, the district court has discretion to allow a defendant to plead an

12  affirmative defense in a subsequent motion." *Simmons v. Navajo Cnty.*, 609 F.3d 1011, 1023 (9th

13  Cir. 2010). The court has approved district court decisions allowing a defendant to raise an

14  affirmative defense for the first time in a motion for summary judgment where there is no

15  prejudice to the plaintiff. *Rivera*, 726 F.2d at 566.

16        First Specialty asserted its entitlement to an offset in its first motion for summary

17  judgment. (Dkt. No. 35 at 17.) The Court has since given both parties the opportunity to file a

18  second round of motions for summary judgment addressing damages. Moreover, the black letter

19  law that a party may not obtain double recovery for the same damages is well established in

20  Washington. *See, e.g.*, *Eagle Point Condo. Owners Ass'n v. Coy*, 9 P.3d 898 (Wash. Ct. App.

21  2000) ("It is a basic principle of damages, both tort and contract, that there shall be no double

22  recovery for the same injury."). The Association argues that if First Specialty had pled offset in

23  its answer, the Association would have gathered and prepared evidence in response. (Dkt. No. 74

24  at 2.) The Court, however, cannot imagine what "evidence"—beyond the hundreds of pages of

25  documents already filed by the parties in this matter—could be relevant to this issue or outside of

26  the Association's control. The Association was an active participant in the settlement

1   negotiations resulting in the confession of judgment against Steadfast and Madera West, LLC. If

2   there were a witness who had admissible evidence about those negotiations that was relevant to

3   the offset question, the Association would know about the witness and could have filed a

4   declaration either in support of its own motion for summary judgment on damages or in

5   opposition to First Specialty's motion. Accordingly, the Court concludes that although First

6   Specialty failed to raise offset in its answer to the Association's complaint, the Association has

7   suffered no prejudice in its ability to respond to the offset claim and the Court will consider it.

8          An insurer seeking an offset for payments made by another insurer in exchange for a

9   general release bears the burden of proving a double recovery. *Weyerhaeuser Co. v. Commercial*

10  *Union Ins. Co.*, 15 P.3d 115, 126–27 (Wash. 2000). Weyerhaeuser sued its thirty-four different

11  insurers for coverage of property damage at forty-two polluted sites around the country. *Id.* at

12  120. Commercial Union was the only insurer that did not settle with Weyerhaeuser before trial.

13  *Id.* The Washington Supreme Court concluded that Commercial Union failed to show that

14  Weyerhaeuser had been fully compensated for its liabilities by the settlements with its other

15  insurers and therefore Commercial Union was not entitled to any offset. *Id.* at 127. The court

16  also explained that the settling insurers had received more than "a simple release of liability at

17  specific sites," they also "purchased certainty by avoiding the risks of an adverse trial outcome—

18  not to mention forgoing the expenses associated with a risky trial." *Id.* at 126. The court adopted

19  Weyerhaeuser's description of the benefit to the settling insurers as "a release from an

20  unquantifiable basket of risks and considerations." *Id.*

21         The Association argues that First Specialty is not entitled to any setoff under

22  *Weyerhaeuser* because Steadfast's other insurer (Colony Insurance Company) settled for more

23  than just a release of liability for damages caused by Steadfast's work on the Madera West

24  condos. The Association argues that Colony received a release of all "known, unknown and

25  unquantifiable claims," litigation peace, and a promise from the Association to "defend,

26  indemnify, and hold it harmless for claims by the remaining parties to the underlying suit." (Dkt.

ORDER ON MOTIONS FOR SUMMARY
JUDGMENT ON DAMAGES
PAGE - 4

No. 22-18 (settlement agreement terms).) Unlike *Weyerhaeuser*, this is not a complex

environmental pollution case. It involves straightforward claims for construction defects at a

single condominium project. (*See* Dkt. No. 33-16 at 7–12 (Madera West, LLC's third-party

complaint against Steadfast).) There were no potential bad faith claims against Colony, because

Colony actively and ably defended its insured. Moreover, the Association has filed a declaration

from the attorney Colony hired to represent Steadfast, stating that during negotiations with the

Association, the attorney was "resolute" that the consent judgment against Steadfast be limited to

the cost to repair those areas of the project on which Steadfast worked. (Dkt. No. 47.)

Despite Colony's $300,000 payment to the Association, the Association argues that it

"has not collected a penny to satisfy" the judgment entered against Steadfast. (Dkt. No. 66.) In

support, the Association has submitted a declaration from one of its members, Tamara Vera,

stating that her understanding was that the confession of judgment entered against Steadfast was

"in addition to the other terms and considerations contained in the settlement." (Dkt. No. 68 at

¶ 2.) The Court finds the Association's argument disingenuous at best. Ms. Vera's self-serving

statement of her understanding of the settlement terms is presumably based on the advice of the

Association's counsel. The Court does not agree with counsel's legal argument regarding offsets.

There were simply no "unknown" or "unquantifiable" claims against Steadfast or Colony from

which Colony needed release. First Specialty has carried its burden of showing that Colony's

$300,000 payment to the Association was a payment toward Steadfast's liability for damages to

the Madera West condos because, logically, it could not have been for anything else. Colony's

classification of the $300,000 check as an "indemnity" payment on Steadfast's behalf supports

this conclusion. (Dkt. No. 71-1 at 7–8.)

For the foregoing reasons, First Specialty is entitled an offset for the $300,000 payment

by Colony and is liable for the $216,889 balance of the confession of judgment entered against

Steadfast.

1    **C.      Interest**

2        The Association argues that it is entitled to "interest on its judgment against Steadfast,"

3    which it argues began to run on the date the confession of judgment against Steadfast was

4    entered in King County Superior Court. (Dkt. No. 66 at 12.) The Association is seeking

5    prejudgment interest (i.e., interest that accrued before the date on which this Court enters

6    judgment). There is no issue of post-judgment interest because the Court has not yet entered

7    judgment. *See* Fed. R. App. P. 37.

8        "State pre-judgment interest rules are to be applied in diversity actions." *James B.*

9    *Lansing Sound, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 801 F.2d 1560, 1569 (9th

10   Cir. 1986). Under Washington law, a party is entitled to prejudgment interest where the exact

11   amount due is "liquidated," which means a "claim where the evidence, if believed, makes it

12   possible to compute the amount due with exactness, without reliance on opinion or discretion."

13   *Weyerhaeuser*, 15 P.3d at 132 (citing *Prier v. Refrigeration Eng'g Co.*, 442 P.2d 621 (Wash.

14   1968)). A claim may be liquidated "even though the adversary successfully challenges the

15   amount and succeeds in reducing it." *Id.* When the only question presented to the trier of fact is

16   liability and the award of damages does not involve an exercise of discretion, a claim is

17   liquidated. *Id.* at 133. Moreover, in an insurance coverage dispute, "a settlement made in an

18   underlying civil action represents a liquidated amount and an award of prejudgment interest is

19   appropriate." *Pub. Util. Dist. No. 1 of Klickitat Cnty. v. Int'l Ins. Co.*, 881 P.2d 1020, 1032

20   (Wash. 1994).

21       Applying these rules, the Association's claim was liquidated as of the date that the

22   confession of judgment against Steadfast was approved as reasonable. The Association asserted

23   that First Specialty was liable for the entire amount of the confession of judgment, but the Court

24   has significantly reduced that amount based on setoff. Because that result was required by

25   application of relevant legal rules and did not involve any exercise of discretion, the claim was

26   liquidated as of April 12, 2012, when the state trial court entered an order finding the confession

1   of judgment reasonable. (Dkt. No. 33-19).

2          Under Washington law, "prejudgment interest on liquidated claims ordinarily is a matter

3   of right" but a trial judge has "discretion to disallow such interest during periods of unreasonable

4   delay in completing litigation that is attributable to claimants." *Colonial Imps. v. Carlton Nw.,*

5   *Inc.*, 921 P.2d 575, 583 (Wash. Ct. App. 1996). First Specialty argues that the Court should

6   decline to award prejudgment interest because the Association's procedural missteps, including

7   failing to have the confession of judgment properly entered as a judgment, caused unreasonable

8   delay in resolving the litigation. The Court does not agree. The Association promptly notified

9   First Specialty that the confession of judgment had been entered against Steadfast and found

10  reasonable by the trial court. (Dkt. No. 33-19.) First Specialty did not respond by questioning

11  whether there was in fact a "judgment" against its insured. Instead it asserted that it owed

12  Steadfast no duty to defend based on lack of tender and various coverage defenses.

13         For the foregoing reasons, the Association is awarded prejudgment interest on $216,889

14  at the statutory rate of twelve percent per annum from April 12, 2012, to the date of this order.

15  Wash. Rev. Code § 19.52.020(1). The Court calculates the total prejudgment interest to be

16  $38,172.46.[1]

17         **D.    Attorney's Fees**

18         The Association argues that it is entitled to an award of attorney's fees under *Olympic*

19  *Steamship Company v. Centennial Insurance Company*, 811 P.2d 673 (Wash. 1991). *Olympic*

20  *Steamship* held that "an award of fees is required in any legal action where the insurer compels

21  the insured to assume the burden of legal action, to obtain the full benefit of his insurance

22  contract." *Id.* at 681.

23         First Specialty argues that the Association is not entitled to attorney's fees in this matter

24  _____

25         [1] The Court has used the simple interest formula ($I = P \times r \times t$), where P = principle, r =

26  rate and t = time.  Using that formula, the Court calculates the monthly interest rate on
    $216,889.00 to be $2,168.89 and the daily rate to be $72.30.

ORDER ON MOTIONS FOR SUMMARY
JUDGMENT ON DAMAGES
PAGE - 7

1   because Steadfast breached the terms of the insurance policy by failing to provide First Specialty

2   with a copy of the third-party complaint filed against it. First Specialty relies on *Liberty Mutual*

3   *Insurance Company v. Tripp*, 25 P.3d 997 (Wash. 2001). In *Tripp*, the court concluded that

4   attorney's fees were not available where an insured breached the express terms of an

5   underinsured motorist policy by failing to give the insurer notice of a potential settlement with

6   the at-fault driver. *Id.* at 1006. The court explained that "it was the Tripps' failure to comply with

7   express terms of the insurance contract, not Liberty's conduct, that precipitated this action." *Id.*

8   The court specifically relied on a previously established exception to *Olympic Steamship*; fees

9   are not available "when an insured has undisputedly failed to comply with express coverage

10  terms, and the noncompliance may extinguish the insurer's liability under the policy." *Id.*

11  (quoting *Pub. Util. Dist. No. 1 of Klickitat Cnty. v. Int'l Ins. Co.*, 881 P.2d 1020 (1994)).

12          The Association is entitled to attorney's fees under *Olympic Steamship*. The exception

13  discussed in *Tripp* does not apply in this case because—as previously discussed at length in the

14  Court's summary judgment order (Dkt. No. 58)—Steadfast's failure to provide First Specialty

15  with a copy of the third-party complaint was the result of First Specialty's unambiguous denial

16  of Steadfast's prior tender of the claims against it. Steadfast's failure to provide First Specialty

17  with the third-party complaint did not extinguish First Specialty's liability under the policy and it

18  was First Specialty's conduct—not Steadfast's—that precipitated this litigation.

19          The Association seeks attorney's fees in the amount of $397,061.44. (Dkt. No. 76 at ¶ 7.)

20  First Specialty objects that the Association's fee request is not reasonable and argues that in any

21  event the amount of fees should be determined upon the filing of a separate motion after the

22  Court enters judgment. (Dkt. No. 72 at 8 (citing Fed. R. Civ. P. 54(d)(2)(B)). Federal Rule of

23  Civil Procedure 54(d)(2)(B) provides that a claim for attorney's fees should be filed within

24  fourteen days after the Court enters judgment "unless a statute or court order provides

25  otherwise." The Court's prior scheduling order gave the parties notice that it would consider

26  whether an award of attorney's fees was appropriate and if so, the appropriate amount of such an

1  award. (Dkt. No. 63 at 1.) Moreover, the Court has permitted First Specialty to file a

2  supplemental brief setting forth its specific objections to the attorney's fees requested. (Dkt. Nos.

3  79, 81.)

4         A party seeking attorney's fees "bears the burden of proving the reasonableness of the

5  fees." *Mahler v. Szucs*, 957 P.2d 632, 651 (Wash. 1998), *overruled on other grounds by Matsyuk*

6  *v. State Farm Fire & Cas. Co.*, 272 P.3d 802 (Wash. 2012).[2] In determining a reasonable fee,

7  courts should be guided by the lodestar amount, which is calculated by multiplying a reasonable

8  hourly rate by the number of hours reasonably expended on the litigation. *McGreevy v. Or. Mut.*

9  *Ins. Co.*, 951 P.2d 798, 802 (Wash. Ct. App. 1998).

10                    **1.   Reasonable Hourly Rate**

11         The Association is represented by the law firm of Casey & Skoglund. It seeks

12  compensation for work done by partners Todd Skoglund and Chris Casey at a rate of $365 per

13  hour. (Dkt. No. 76 at ¶ 6.) The Association seeks compensation for work performed by associate

14  Adil Siddiki at the rate of $300 per hour. (Dkt. No. 69 at ¶¶ 8, 11.) It seeks compensation for

15  work performed by paralegal Sarah Noble at the rate of $135 per hour. (Dkt. No. 69 at ¶¶ 9, 11.)

16  The Association argues that the complexities of the case necessitated association with Joseph

17  Grube, a partner at Breneman & Grube (Dkt. No. 69 at ¶ 6), and with John Petrie, a partner at

18  Ryan Swanson & Cleveland (Dkt. No. 69 at ¶ 10). The Association seeks compensation for Mr.

19  Grube's work at the rate of $365 per hour (Dkt. No. 69 at ¶ 11) and for Mr. Petrie's work at the

20  rate of $380 per hour. Finally, it seeks compensation for the work of Teru Olsen, an associate at

21  Ryan Swanson & Cleveland, at the rate of $275 per hour (Dkt. No. 67 at ¶¶ 5–6).

22         If the attorney seeking fees has "an established rate for billing clients, that rate will likely

23

24  —————————————————

25         [2] First Specialty cites federal authority regarding award of attorney's fees. (Dkt. No. 81 at
    2.) The Court applies Washington law to determine the amount of fees because Washington law
26  dictates whether fees are available in this case. As First Specialty concedes, the state and federal
    rules for determining the reasonableness of a fee award are essentially the same.

be a reasonable rate." *Bowers v. Transamerica Title Ins. Co.*, 675 P.2d 193, 203 (Wash. 1983). Courts may also consider a contingent fee agreement as a factor in making a fee award. *Allard v. First Interstate Bank of Wash., N.A.*, 768 P.2d 998, 1000 (Wash. 1989). The contingent nature of a fee agreement may justify an increase in the reasonable hourly rate because the attorney risks receiving no compensation at all. *McGreevy*, 951 P.2d at 803. But, it is not appropriate to adjust the lodestar amount to reflect the contingent nature of a fee arrangement if the hourly rate sought already accounts for the risk undertaken by counsel working under a contingent fee agreement. *Id*. The court may also consider the "experience, reputation, and ability of the lawyer or lawyers performing the services" when setting a reasonable hourly rate. *Mahler*, 957 P.2d at 651 n.20.

The Association entered into a "contingent hourly agreement" with Casey & Skoglund, under which the work of partners is billed at $365 per hour, the work of associates is billed at $300 per hour, and the work of paralegals is billed at $135 per hour. (Dkt. No. 69 at ¶ 11.) The Association's willingness to agree to compensation at an hourly rate that it would never become responsible for paying, however, is of little aid in determining the reasonableness of the rates requested.[3] Counsel's declaration states that the fees requested are at the high end of the rates that Casey & Skoglund typically charges for its legal services. (Dkt. No. 69 at ¶ 17.)

First Specialty challenges the rates requested for attorneys Skoglund, Casey, Grube and Siddiki on the grounds that that its own attorney charges far less, $200 per hour. (Dkt. No. 71 at 9 n.4.) In addition, First Specialty's counsel declares that her practice has focused on insurance coverage since 1983, that she is a founding shareholder of the insurance defense firm Soha & Lang, that she has taught the Insurance Law course at the University of Washington School of Law since 1993, and that she is active in the local insurance coverage bar. (Dkt. No. 82 at ¶ 2.) She asserts that she has never seen attorneys Casey or Grube appear as counsel in an insurance coverage matter. (*Id.* at ¶ 3.) She asserts that attorneys Skoglund and Siddiki practice primarily in

---

[3] In a typical contingency fee arrangement, the client agrees that counsel will receive a percentage of the client's ultimate recovery.

the field of construction defect litigation, not in the field of insurance coverage. (*Id.*) First Specialty also points to procedural missteps by the Association's counsel as evidence of their lack of experience in the insurance coverage arena. (Dkt. No. 82 at ¶ 4.) First Specialty did not provide evidence that the rates requested by the Association are inconsistent with the prevailing market rates for contingent fee work by plaintiffs' attorneys in insurance coverage disputes.

The Court concludes that high-end rates are justified by the contingent nature of counsel's fee arrangement with the Association. No further upward adjustments will be awarded on that basis. *McGreevy*, 951 P.2d at 803. Nonetheless, based on the declarations of all counsel filed in this matter, as well as the Court's familiarity with hourly rates regularly charged in the Seattle area, the Court concludes that the hourly rates requested should be reduced. The Court concludes that a reasonably hourly rate for attorneys Skoglund, Casey, and Grube is $325 per hour and for attorney Siddiki is $270 per hour. Because First Specialty does not request any reduction in the hourly rates claimed by the attorneys at Ryan Swanson & Cleveland, they will be compensated at the requested hourly rates.

### 2.  Hours Reasonably Expended

The attorneys seeking fees must provide "reasonable documentation of the work performed" in order to allow the court to assess whether the number of hours expended was reasonable. *McGreevy*, 951 P.2d at 803. The court will "exclude from the requested hours any wasteful or duplicative hours and any hours pertaining to unsuccessful theories or claims." *Mahler*, 957 P.2d at 651. First Specialty argues that much of the time expended by the Association's counsel was unreasonable.

The Association seeks compensation for over 1,000 hours of attorney time expended by the law firm of Casey & Skoglund and attorney Joseph Grube in this case. (Dkt. No. 76 at 2.) The Association also seeks compensation for over 200 hours of paralegal time. (*Id.*) In addition, the Association seeks compensation for over fifty hours of time by an outside attorney hired to advise Casey & Skoglund on insurance issues. The case involved limited discovery and all issues

of liability were resolved on cross motions for summary judgment. As a result, the hours

expended are not reasonable.

First Specialty challenges 15.37 hours expended on the Association's unsuccessful

motion to amend its complaint. *See Mahler*, 957 P.2d at 561 (time spent on unsuccessful claims

not compensable.) The Association concedes that time expended on the unsuccessful motion

should not be compensated. (Dkt. No. 69 at ¶ 13.) The challenged hours appear to have been

erroneously included in the fee request. Even if they were not, the Court concludes that a

reduction for these hours is appropriate. Accordingly, 3.69 hours will be deducted from Mr.

Siddiki's time entries and 10.51 hours[4] will be deducted from Mr. Skoglund's time entries. For

the same reason, the Court reduces the time entries of Mr. Siddiki by 17.02 hours[5] and the entries

of Mr. Skoglund by 2.35 hours, for time spent on unsuccessful claims under the Insurance Fair

Conduct Act and Washington Consumer Protection Act. (Dkt. No. 82-1 at 9.) The Court also

deducts fees requested for work opposing First Specialty's request for a setoff. Accordingly, Mr.

Grube's time entries are reduced by 5.10 hours, Mr. Siddiki's entries are reduced by 1.00 hour

and Mr. Skoglund's entries are reduced by 6.5 hours. (Dkt. No. 69-3 at 3, 30, 39–40.)

First Specialty challenges 60.05 hours expended on reasonableness motions filed in the

underlying construction defect suit. (Dkt. Nos. 81 at 7, 82-1 at 7.) The Court agrees that the

reasonableness motions were not part of the coverage suit before this Court and should not be

charged to First Specialty. Moreover, it appears that much of Mr. Siddiki's time was spent on a

reasonableness motion pertaining to the confession of judgment against Madera West, LLC,

which has no relevance to this case. (*See* Dkt. No. 69-3 at 27 (entries dated February 13, 2012 to

---

[4] The Court has not reduced Mr. Skoglund's time by the 1.17 hours expended on March 18, 2013, as request by First Specialty. (Dkt. No. 82-1 at 13.) That time appears to have been spent on the Association's motion for summary judgment.

[5] This includes a reduction of 8 hours expended on June 10, 2013. (Dkt. No. 82-1 at 9.) That time is also listed on First Specialty's list of total time spent on the Association's motion for summary judgment (Dkt. No. 82-1 at 11), but the Court has not considered it further in discussing the time spent on the summary judgment motion.

1  March 15, 2012)). Accordingly, 47.04 hours will be deducted from Mr. Siddiki's time entries

2  and 13.01 hours will be deducted from Mr. Skoglund's time entries.

3         The Court next turns to the hours expended on the motions for summary judgment on

4  liability (Dkt. Nos. 31, 35). By the Court's conservative estimate, the Association seeks

5  compensation for over 220 hours of time expended by four attorneys on those motions. The

6  Court recognizes that the motions and supporting documents were voluminous, but that level of

7  billing is simply beyond anything for which an attorney could reasonably charge a client for a

8  motion involving relatively straightforward issues of insurance coverage. In light of the fact that

9  the Court is permitting high-end rates for the work of partners on this matter, the Court

10 concludes that having three partners (and an associate) working on drafting and reviewing the

11 motions for summary judgment was excessive. Moreover, Mr. Casey's time entries reflect an

12 initial determination that Mr. Skoglund would "take lead" on the case. (Dkt. No. 69-3 at 1 (entry

13 dated April 27, 2012).) Accordingly, the Court deducts all the time spent by Mr. Casey on the

14 motions for summary judgment from the fee award. This results in a reduction of 40.68 hours

15 from Mr. Casey's time entries. The Court finds that a further reduction of the time spent by Mr.

16 Skoglund, Mr. Grube, and Mr. Siddiki by twenty-five percent is appropriate based on the number

17 of claims on which the Association was not successful. Accordingly, the time entries of Mr.

18 Siddiki are reduced by 16.10 hours, the entries of Mr. Skoglund are reduced by 29.44 hours, and

19 the entries of Mr. Grube are reduced by 12.33 hours.

20         After the reductions discussed above, the Association requests fees for at least 600 hours

21 of attorney time, none of which were expended on the summary judgment motions filed in the

22 case. The Court has difficulty imagining that all of those hours were necessary, particularly in

23 light of the fact that only one deposition was taken in this case. In many cases, counsel's time

24 records are too vague to allow the Court to determine whether specific time was reasonably

25 necessary. Additionally, some time entries concern the Court. For example, Mr. Grube, Mr.

26 Siddiki, Mr. Skoglund and Mr. Petrie spent at least 5.1 hours "reviewing" First Specialty's

motion for reconsideration. (Dkt. No. 69-3 at 3, 30, 38; Dkt. No. 67 at 5.) The motion was ten

pages long, the Association was not permitted to respond to it except at the Court's request, *see*

Local Civil Rule 7(h), and the Court denied it less than forty-eight hours after it was filed.

Similarly, Mr. Skoglund billed .17 hours (10.2 minutes) for sending a text message. (Dkt. No.

69.3 at 37 (time entry dated August 14, 2013).) For these reasons, the Court further reduces the

hours requested by Mr. Skoglund, Mr. Siddiki, and Mr. Grube by twenty percent.

Next the Court turns to the time billed by attorneys at the firm of Ryan Swanson &

Cleveland. The time expended by associate Teru Olsen was for research on a claim on which the

Association did not prevail and will not be compensated. The Court further finds that First

Specialty's objections to the billing records submitted by Mr. Petrie are justified and reduces his

hours as requested, with an additional reduction of two hours for time spent researching the

offset issue. (Dkt. Nos. 81 at 6, 82 at 3, 82-1 at 2–5.)

Finally, the Court agrees with First Specialty that approximately 47.04 hours of time

expended by paralegal Sarah Noble was for purely clerical functions, which cannot be billed at

paralegal rates, and reduces the requested fees accordingly.

**Summary of Fee Award**

| Professional | Reasonable Hourly Rate | Hours Requested | Reduction in Hours | Hours Reasonably Expended | Total Fees |
|---|---|---|---|---|---|
| Todd Skoglund | $325 | 530.24 | 155.50 | 374.74 | $121,790.50 |
| Chris Casey | $325 | 75.37 | 40.68 | 34.69 | $11,274.25 |
| Joseph Grube | $325 | 132.30 | 40.40 | 91.90 | $29,867.50 |
| Adil Siddiki | $270 | 264.47 | 120.77 | 143.70 | $38,799.00 |
| John Petrie | $380 | 50.80 | 21.90 | 28.90 | $10,982.00 |
| Teru Olsen | $275 | 2.80 | 2.80 | 0 | $0 |
| Sarah Noble | $135 | 207.04 | 47.04 | 160 | $21,600.00 |
| **TOTAL FEES:** | | | | | $234,313.25 |

**E.     Costs**

The Association seeks $10,268.81 in costs. First Specialty is correct that a bill of costs

should be submitted to the Clerk after judgment is entered. Fed. R. Civ. P. 54(d); Local Rules

1    W.D. Wash. 54(d). The Association should submit a bill of costs as provided by the local rule.

2    Any motion directed to the Court under Local Civil Rule 54(d) for excess costs that are not

3    permitted by statute will be carefully scrutinized. No further requests for attorneys' fees based on

4    disputes over costs will be entertained.

5    **III.     CONCLUSION**

6          For the foregoing reasons, the parties' cross motions for summary judgment regarding

7    damages (Dkt. Nos. 66, 70) are GRANTED IN PART and DENIED IN PART. The Court will

8    enter judgment in favor of the Association and against First Specialty in the amount of

9    $489,374.71.

10         DATED this 1st day of October 2013.

11

12

13

14

15

16                                                     John C. Coughenour
                                                       UNITED STATES DISTRICT JUDGE
17

18

19

20

21

22

23

24

25

26

ORDER ON MOTIONS FOR SUMMARY
JUDGMENT ON DAMAGES
PAGE - 15